**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OKSANA CHORNOMAZ, <br><br> Plaintiff, <br><br> v. <br><br> BRISTOL–MYERS SQUIB COMPANY *et al.*, <br><br> Defendants. | Civil Action No. 22-5283 (MAS) (RLS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on a Motion to Compel Arbitration and Stay Proceedings Pending Arbitration filed by Defendant Bristol–Myers Squib Company ("Defendant" or "BMS"). (ECF No. 10.) Plaintiff Oksana Chornomaz ("Plaintiff" or "Chornomaz") opposed (ECF No. 22), and Defendant replied (ECF No. 26). The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion is granted.

**I.    BACKGROUND**

This case arises out of Plaintiff's employment with BMS from April 2020 until December 2021. (Am. Compl. ¶¶ 27, 58, ECF No. 4.)

In April 2020, Plaintiff was hired by BMS as an Executive Associate. (*Id.* ¶ 27.) As part of Plaintiff's hiring process, and in accordance with BMS's arbitration policy and program, Plaintiff was given a copy of the BMS Mutual Arbitration Agreement, dated January 2020

("Arbitration Agreement"). (Decl. of Susan Small ("Small Decl.") ¶¶ 2-4, ECF No. 10-2; *see also* Decl. of Mary Beth Nagy ¶¶ 4, 5, ECF No. 10-3.)

According to Defendant's records, on April 24, 2020, Plaintiff reviewed and electronically signed the Arbitration Agreement uploaded to her account on BMS's onboarding platform. (Small Decl. ¶ 5; Small Decl. Ex. B, ECF No. 10-2.) In doing so, Plaintiff accepted the following terms regarding resolving employment-related disputes by arbitration:

> [A]ll disputes, claims, complaints, or controversies ("Claims") that you have now, or at any time in the future may have, against Bristol–Myers Squibb Company and/or any of its parents, subsidiaries, affiliates, predecessors, successors, assigns, current, former, or future officers, directors, employees, and/or those acting as an agent of the Company (which make up the definition of the "Company "), or that the Company has now or at any time in the future may have against you ("Covered Claims"), arising out of and/or related to your application for employment with the Company, your employment with the Company, and/or the termination of your employment with the Company will be resolved by arbitration and NOT by a court or jury.
>
> …
>
> **THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A JUDGE OR A JURY DECIDE ANY COVERED CLAIMS.**

(Mutual Arbitration Agreement ("Agrmt.") ¶ 1.a., Small Decl., Ex. A, ECF No. 10-2.)

At the end of the Arbitration Agreement, it further explained:

> You understand that your affirmative signature of this Agreement is not required for the Agreement to be enforced. **If you commence work for the Company without signing this Agreement, this Agreement will be effective, and you will have agreed to, ratified and accepted this Agreement through your knowledge of it and your acceptance of and continued employment with the Company.**

(*Id.* ¶ 7.)

On September 7, 2021, in connection with the novel coronavirus ("COVID-19") pandemic, BMS announced a revision to its company policy requiring employees to be fully vaccinated against COVID-19 by November 1, 2021 ("COVID-19 Vaccination Policy"). (Am. Compl. ¶ 30.) As part of BMS's rollout of the policy, it also stated that it would terminate "for cause" those

2

employees who did not comply with the COVID-19 Vaccination Policy. (*Id.* ¶ 31.) The policy also included an exception provision, allowing BMS to accept and consider individual employees' requests for medical or religious accommodation. (*Id.* ¶ 32.) To apply for religious accommodation from the COVID-19 Vaccination Policy, BMS employees were required to complete a request form, which asked employees to identify "what their religious beliefs were, how [those beliefs] conflicted with the policy, the duration of the requested accommodation, and what accommodation they desired." (*Id.* ¶ 40.)

On September 30, 2021, Plaintiff submitted a request form for a religious accommodation from the COVID-19 Vaccination Policy, claiming that her sincerely held religious beliefs precluded her from being vaccinated against COVID-19. (*Id.* ¶ 42.) Plaintiff's objections to the COVID-19 vaccine were based on her religious affiliation with the "Ukrainian Greek Catholic Church, an Eastern Catholic Church of the Byzantine Rite." (*Id.*) She explained to BMS that she did not object to traditional medicine or traditional vaccines, but instead, objected to "the technology utilized in the available Covid vaccines." (*Id.* ¶¶ 45-46.) Specifically, she objected to "mRNA/viral vectored vaccine technology, spike protein technology, the use of fetal stem cells or genetically modified, artificially preserved, or 'immortalized human cell lines' as being against God's Will and the beliefs of her church." (*Id.* ¶ 43.)

In correspondence dated November 18, 2021, to Plaintiff from Defendant Caitlin Freeland ("Freeland"), Executive Director of Human Resources for BMS, BMS denied Plaintiff's request for religious accommodation. (*Id.* ¶¶ 20, 47, 58.) BMS did so on the grounds that "Plaintiff did not sincerely hold a religious belief that precluded her from receiving the COVID-19 vaccination" and that "any reasonable accommodation, such as to work remotely, would result in an undue burden to BMS." (*Id.* ¶ 48.) Subsequently, because Plaintiff did not receive any COVID-19 vaccine, she was involuntarily terminated by BMS on or about December 6, 2021. (*Id.* ¶ 58.)

Thereafter, Plaintiff initiated the present lawsuit against Defendants BMS and Freeland (together, "Defendants") on August 29, 2022. (ECF No. 1.) On September 8, 2022, Plaintiff amended her complaint, asserting six causes of action for religious discrimination: (1) failure to accommodate under the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5−12 *et seq.* (the "NJLAD") (Count One); (2) wrongful termination under the NJLAD (Count Two); (3) aiding and abetting by Freeland in violation of the NJLAD (Count Three); (4) failure to accommodate under "Title XII" of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (the "Civil Rights Act") (Count Four);[1] (5) wrongful termination under "Title XII" of the Civil Rights Act (Count Five); and (6) declaratory judgment voiding the COVID-19 Vaccination Policy under the New Jersey Declaratory Judgment Act, N.J.S.A. §§ 2A:16−50 *et seq.*, and the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201−2202 (Count Six). (Am. Compl. 12-36.)

In lieu of filing an answer, Defendant BMS now moves to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 4 (the "FAA"), arguing that the Arbitration Agreement compels Plaintiff to arbitrate all claims related to her employment with Defendant, including all those asserted in the Amended Complaint. (Def.'s Moving Br. 5, ECF No. 10-1.)

## II.  LEGAL STANDARD

"The FAA declares that '[a] written provision in any . . . contract . . . to settle by arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Preziosi v. JetSmarter, Inc.*, No. 19-13627, 2020 WL 978637, at *2 (D.N.J. Feb. 28, 2020) (quoting 9 U.S.C. § 2). Because arbitration is a matter of contract,

---

[1] Plaintiff asserts claims under "Title XII" of the Civil Rights Act in Counts Four and Five. (Am. Compl. ¶¶ 83–92.) However, because "Title XII" is not a provision of the Civil Rights Act and therefore, is not a valid cause of action, the Court will analyze Plaintiff's claims under Title VII of the Civil Rights Act ("Title VII"), which makes it unlawful for an employer to "discharge . . . or otherwise to discriminate against any individual" in his or her employment "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).

4

before compelling a party to arbitrate pursuant to the FAA, a court must determine that (1) there is a valid agreement to arbitrate and (2) the particular dispute at issue falls within the scope of the agreement. *Id.* (quoting *Flintkote Co. v. Aviva PLC*, 769 F.3d 215, 220 (3d Cir. 2014)). "Whe[n] there is a contract between the parties that provides for arbitration, there is an 'emphatic federal policy in favor of arbitral dispute resolution.'" *Hoover v. Sears Holding Corp.*, No. 16-4520, 2017 WL 2577572, at *1 (D.N.J. June 14, 2017) (internal quotation marks and citation omitted). As such, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]" *Preziosi*, 2020 WL 978637, at *2 (citations omitted); *see also Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)) ("It is well established that the [FAA] reflects a 'strong federal policy in favor of the resolution of disputes through arbitration.'").

The Third Circuit has enumerated a standard for district courts to apply when deciding a motion to compel arbitration. The Third Circuit explained:

> When it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on [the] question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard.

*Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (alteration in original) (internal quotation marks and citation omitted).

5

## III. DISCUSSION

### A. Existence of a valid arbitration agreement

First, Defendant argues that Plaintiff agreed to arbitrate her claims by signing and agreeing to the terms of the Arbitration Agreement as a condition of her employment in April 2020. (Def.'s Moving Br. 5, 8.) This agreement, BMS contends, constitutes a valid agreement to arbitrate and is supported by adequate consideration in the form of BMS's extension of an offer and Plaintiff's commencement of employment and compensation. (*Id.* at 9-10.)

While Plaintiff does not dispute that she reviewed, accepted, and executed the Arbitration Agreement upon her employment with BMS, she nonetheless argues that there was no valid agreement to arbitrate between her and BMS (Pl.'s Opp'n Br. 6, ECF No. 22). She alleges that she "never intended to agree to arbitrate this type of action" and that the documentation exhibited by Defendant with respect to the Arbitration Agreement "does not prove any meeting of the minds nor was there ever any consideration for the agreement." (*Id.* at 6-7.)

The FAA specifically permits states to regulate contracts, including contracts containing arbitration agreements under general contract principles and therefore, an arbitration clause may be invalidated "upon such grounds as exist at law or in equity for the revocation of any contract." *Martindale v. Sandvik, Inc.*, 800 A.2d 872, 877 (N.J. 2002) (quoting 9 U.S.C. § 2). "An agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law." *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312 (N.J. 2014) (internal quotation marks and citation omitted). "A legally enforceable agreement requires 'a meeting of the minds[,]'" *id.* at 313 (citation omitted), and must be supported by consideration, *Martindale*, 800 A.2d at 878-79. New Jersey courts have upheld arbitration clauses that have explained in various ways "that arbitration is a waiver of the right to bring suit in a judicial forum." *Atalese*, 99 A.3d at 314. In the employment setting, "a waiver-of-rights provision

6

must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim." *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1104 (N.J. 2003); *see also Atalese*, 99 A.3d at 316 (internal quotation marks and citation omitted) (noting that in an employment setting, employees must "at least know that they have agreed to arbitrate all statutory claims arising out of the employment relationship or its termination").

Here, the Arbitration Agreement was the product of mutual assent. *See, e.g., Antonucci v. Curvature Newco, Inc.*, 270 A.3d 1088, 1094 (N.J. Super. Ct. App. Div. 2022). Defendant sent Plaintiff a copy of the Arbitration Agreement through her account on Defendant's onboarding platform. (Small Decl. ¶ 3.) New Jersey contract law recognizes that an electronic communication, such as the one used by Defendant here, is "a clear and effective method of communicating proposed contract terms." *Skuse v. Pfizer*, 236 A.3d 939, 953 (N.J. 2020). Plaintiff then accepted the Arbitration Agreement on April 24, 2020. (Small Decl. ¶ 5.)[2] Plaintiff's argument that she "never intended to agree to arbitrate this type of action" is unpersuasive given that, before signing, she presumably read the Arbitration Agreement she received from BMS as part of her onboarding process. As a general rule, "one who does not choose to read a contract before signing it cannot later relieve [her]self of its burdens." *Skuse*, 236 A.3d at 54 (internal quotation marks and citations omitted); *see also Goffe v. Foulke Mgmt. Corp.*, 208 A.3d 859, 873 (2019) ("[T]he argument that [a] plaintiff did not understand the import of the arbitration agreement and did not have it explained to her by [defendant] is simply inadequate to avoid enforcement of [the] clear and conspicuous arbitration agreement[ ] [she] signed."). Further, under Provision 7 of the Arbitration Agreement, by accepting the terms of the agreement, Plaintiff acknowledged and represented that she carefully

---

[2] Plaintiff does not dispute that she was given a copy of the Arbitration Agreement, that she had an opportunity to review it, and subsequently, reviewed and accepted the agreement in the manner asserted by Defendant in its submissions.

7

read and understood the terms, and entered into the Arbitration Agreement voluntarily. (Agrmt. ¶ 7.a.)

In addition to Plaintiff's electronic signature assenting to the Arbitration Agreement,[3] the agreement stated that her affirmative signature on the agreement was not required for it to be enforced and that her continued employment with BMS would constitute acceptance of the Arbitration Agreement, the latter of which is in bold font. (*Id.* at 6.) "[I]n New Jersey, continued employment has been found to constitute sufficient consideration to support certain employment-related agreements." *Martindale*, 800 A.2d at 879-80; *see also Jaworski v. Ernst & Young U.S. LLP*, 119 A.3d 939, 946 (N.J. Super. Ct. App. Div. 2015) (enforcing an employment agreement using similar language providing that an employee "indicates his or her agreement to the [arbitration] [p]rogram and is bound by its terms and conditions by beginning or continuing employment").

Consequently, the Court finds that the Arbitration Agreement, reviewed and accepted by Plaintiff as a condition of her employment, is valid and enforceable.

### B.    Scope of arbitrable claims

Second, Defendant contends that Plaintiff's claims fall within the scope of the Arbitration Agreement. Specifically, Defendant contends that the Arbitration Agreement covers all claims relating to "[Plaintiff's] employment or termination of employment with BMS, including statutory claims and claims for 'discrimination'." (Def.'s Moving Br. 10-11.) On the other hand, Plaintiff argues that her claims in the Amended Complaint fall outside of the scope of the Arbitration Agreement because the COVID-19 Vaccination Policy underlying her claims "was based solely

---

[3] Defendant contends that Plaintiff electronically signed and accepted the Arbitration Agreement on April 24, 2020. (Small Decl. ¶ 5.) However, Defendant did not submit the electronic signature of Plaintiff, as it claims it did in Exhibit B of the Declaration of Susan Smalls. (*Id.* ("A true and correct copy of [Plaintiff's] Electronic Signature to the Arbitration Agreement is attached as Exhibit B."))

8

on politics and not a legitimate employment matter." (Pl.'s Opp. Br. 7.) Further, Plaintiff argues that the language in the Arbitration Agreement is insufficient to constitute "a clear and unmistakable waiver of a judicial forum" for Plaintiff's statutory discrimination claims. (*Id.* at 8-10.)

When determining whether a given claim falls within the scope of an arbitration agreement, a court must focus on the factual allegations in the complaint, rather than the legal causes of action asserted. *Varallo v. Elkins Park Hosp.*, 63 F. App'x 601, 603 (3d Cir. 2003) (internal quotation marks and citation omitted). "If these factual allegations touch matters covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them." *Id.* (internal quotation marks and citations omitted). Furthermore, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).

Based upon the plain text of the Arbitration Agreement in this case, Plaintiff was bound to submit to arbitration all claims "*arising out of and/or related to* your application for employment with the Company, your employment with the Company, and/or the termination of your employment with the Company . . . ." (Agrmt. ¶ 1.a.) (emphasis added). The terms of the Arbitration Agreement clearly stated that the parties "forever waive and give up the right to have a judge or a jury decide any covered claims" and instead, agree to resolve those covered claims by arbitration. (*Id.*) In that regard, the Arbitration Agreement expressly stated that it covered discrimination claims. (*Id.*) ("Claims that the Parties agree to arbitrate include, but are not limited to, the following: . . . *discrimination* and/or harassment claims, retaliation claims, and claims for failure to accommodate." (emphasis added)).

9

Here, the instant matter is undisputedly an "employment-related dispute[]." (*Id.* at 1.) Plaintiff's discrimination claims for BMS's failure to accommodate her religious beliefs and wrongful termination of her employment are pled against the factual backdrop of, and within the context of, her employment and its termination. Indeed, Plaintiff's claims for religious discrimination arise out of, and relate to, her employment and termination of employment with BMS. (*See, e.g.*, Am. Compl. ¶ 62 ("Defendant discriminated against Plaintiff because of her religious beliefs when it unlawfully terminated her, instead of accommodating her . . . ."), ¶ 63 ("Defendant also retaliated against Plaintiff for requesting a religious accommodation when it terminated Plaintiff[] . . . ."), ¶ 70 ("Plaintiff . . . informed BMS of . . . the fact that BMS's vaccine requirement created a conflict with her religious belief."), ¶ 71 ("Plaintiff's religious belief, specifically her objection to mRNA vaccines, was not accommodated by Defendant BMS.").) As such, the Court finds that the plain terms of the Arbitration Agreement encompass Plaintiff's claims.

Plaintiff argues that the Arbitration Agreement's language is ambiguous with respect to statutory claims for violations of the NJLAD, which her claims for failure to accommodate and wrongful termination are asserted under. (*See* Am. Compl. ¶¶ 68-72 (Count One), ¶¶ 73-77 (Count Two), ¶¶ 78-82 (Count Three).) New Jersey state courts, however, have found analogous arbitration clauses broad enough to cover statutory claims, including those under the NJLAD. *See, e.g.*, *Martindale*, 800 A.2d at 96 (concluding that an arbitration agreement pertaining to "all disputes relating to [employee's] employment with [company] or termination thereof" covered plaintiff's statutory causes of action); *Skuse*, 236 A.3d at 951 (holding that plaintiff's NJLAD claim was "indisputably included in the [arbitration] [a]greement's broad language describing the employment-related claims subject to arbitration"); *Singer v. Commodities Corp.*, 678 A.2d 1165, 1172-73 (N.J. Super. Ct. App. Div. 1996) (finding that arbitration provision stating that employee

agreed to arbitrate "any dispute" with employer was sufficiently broad to encompass plaintiff's CEPA claim); *Young v. Prudential Ins. Co. of Am.*, 688 A.2d 1069, 1074 (N.J. Super. Ct. App. Div. 1997) (holding that an employee's CEPA and NJLAD claims were subject to arbitration because he agreed to arbitrate "any dispute, claim or controversy" with his employer).

Further, while the Arbitration Agreement provides examples of statutory claims that are subject to arbitration, it does not mention the claims under the NJLAD explicitly. Instead, it subjects to arbitration "any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or related to your application for employment with the Company, your employment with the Company, and/or the termination of your employment with the Company." (Agrmt. ¶ 1.a.) Such language suggests that the parties intended to arbitrate statutory claims and thus, the Court does not find such language ambiguous in respect to Plaintiff's discrimination claims under the NJLAD.

For the aforementioned reasons, the Court finds that all of Plaintiff's claims are covered by the Arbitration Agreement and thus, are subject to arbitration.

## IV.  CONCLUSION

For the reasons stated above, Defendant's Motion to Compel Arbitration and Stay Proceedings Pending Arbitration is granted. The parties are to arbitrate Plaintiff's claims consistent with the parties' Arbitration Agreement. The case will be stayed pending arbitration. An accompanying Order consistent with this Memorandum Opinion will follow.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**